# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANSELMO GARCIA,<br><br>            Petitioner,<br><br>      v.<br><br>J. D. HARTLEY,<br><br>            Respondent. | 1:09-CV-01603 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Anselmo Garcia (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1993 conviction for second degree murder with the use of a firearm. The trial court sentenced Petitioner to a prison term of twenty years to life. Petitioner is not currently challenging his conviction; rather, the instant petition challenges the decision by the California Board of Parole Hearings (the "Board") to deny Petitioner parole. Petitioner appeared before the Board on January 7, 2008.

In August 2008, Petitioner filed a petition for writ of habeas corpus with the Fresno County Superior Court challenging the Board's decision. (*See* Resp't Answer Ex. A.) The Superior Court issued a reasoned opinion denying the petition on September 15, 2008. (*See* Resp't Answer Ex. B.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Resp't Answer Exs. C, E.) The California Court of Appeal and the California Supreme Court issued summary denials of the petitions. (*See* Resp't Answer Ex. D, F.)

1    On September 10, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

2  Respondent filed a response to the petition on December 20, 2009, to which Petitioner filed a

3  traverse on January 21, 2010.

## FACTUAL BACKGROUND

5    California regulations mandate that the Board consider the circumstances of the commitment

6  offense in determining parole suitability. See Cal. Code Regs. tit. 15, § 2402(c)(1). As the facts of

7  the commitment offense were considered by both the Board and the State court, they are relevant to

8  the Court's inquiry into whether the State court's decision upholding the Board's denial of parole was

9  objectively unreasonable. The Board incorporated into the record a summary of the offense taken

10 from the California Court of Appeal's decision affirming Petitioner's conviction. As read into the

11 record, the portion of the decision stated:

> Richard Jones lived on Button Willow, near Adams Avenue in Reedley. On August 4, 1992, between 10:15 and 10:20 p.m. he heard between eight to ten gunshots in rapid succession. He looked out his window and saw two stationary vehicles, one facing north and the other facing south. The southbound vehicle, which he could not identify, left 30 seconds after the shots were fried. Helen Boos was driving on Button Willow near Adams about 10:15 that night. She saw a person lying in the road beside a truck. She called 911. Sherriff's [sic] Deputy Bayer[] was dispatched to investigate at 10:22 p.m. When he arrived at 10:36 p.m. paramedics on the scene informed him that the victim was dead. [¶]
> Daniel Lozano, [] the victim, died of a gunshot wound to his head. In addition, he had wounds in his left shoulder, left wrist, and right thigh. He also had two gunshot wounds to his head, one adjacent to his left eye and the other behind his left ear. The head wounds were inflicted from a distance of one inch. He had been shot with a .25 caliber weapon. [¶]
> Miriam Cuevas, [] Lozano's girlfriend, testified Lozano left her house in Reedley about 9:55 p.m. He planned to stop at an automated teller machine for money and then get gas for his truck at the Mart and Deli before he drove to his home in Visalia. Bank records showed Lozano withdrew $20 from the Wells Fargo ATM at 11th and F Streets in Reedley at 10:03 p.m. [¶]
> About 9:00 or 9:30 p.m., the 18-year-old [Petitioner] drove himself and 19-year-old Ereberto "Eddie" Cintora[] to the Mart and Deli in Reedley. Eddie used a payphone outside the store to call Patty Cuevas. Patty was [Petitioner]'s former girlfriend and Eddie was trying to get the two back together. [Petitioner] stayed nearby. On the drive over, Eddie ascertained that his .25 caliber semiautomatic handgun was in [Petitioner]'s car. He had left it there a few days earlier, as was his custom. [Petitioner] was aware it was there. [¶]
> When Eddie and Patty had been talking for a while, Daniel Lozano drove into the Mart and Deli parking lot about 10:10 p.m. Lozano and [Petitioner] had argued the month before. Lozano asked [Petitioner] if the invitation was still on. [Petitioner] replied "forget it." Lozano said he did not forget things. [Petitioner] then drove away, west on Manning toward Columbia. Lozano followed in his pick-up truck. According to Eddie, [Petitioner] returned to the Mart and Deli about three minutes later from the direction of Fisher Avenue, which is in the direction of Burton Willow

and Adams Avenue. Eddie continued to talk with Patty about three more minutes until 10:20 or 10:30. [Petitioner] said, "It happened." Eddie told him to shut up. [Petitioner] did not say he was going to meet Lozano at Reedley to fight and Lozano never showed up. [¶]

Eddie and [Petitioner] left the Mart and Deli, met some friends and went to Blackstone Bowl in Fresno in two cars. Eddie took the gun from [Petitioner]'s car, put it in the trunk of the other car. He noticed that quite a few bullets were missing. He has not seen the gun since then. Several hours later, about 3 a.m., on August 5th, the group returned to Reedley. While taking some of the bowlers home, [Petitioner] drove down Button Willow near Adams. He and Eddie saw flare residue. [Petitioner] pointed to an area and told Eddie, Lozano had stopped there and turned on his hazard lights. [Petitioner] said he went straight, then made a U-turn on Burton Willow and returned to the Mart and Deli to get [] Eddie []. [Petitioner] was quiet for a short while then said, "Fuck." [¶]

Patty Cuevas, Mariam's [sic] 16-year-old sister, testified Eddie telephoned her about 9:40 or 9:45 p.m. At one point Eddie said, "I'll call you back. Lozano's here. He's telling [Petitioner] shit." Eddie then told her [Petitioner] left after arguing with Lozano. Patty feared they were going to fight. Eddie told her don't worry, [Petitioner] has my gun. A while later, Patty heard [Petitioner]'s voice over the phone and asked Eddie if he had returned. She estimated [Petitioner] was gone no more than 15 minutes. She and Eddie spoke for another minute or two and then hung up at 10:10 p.m. The police came to Patty's house about 4 a.m. on August 5th and questioned her. Later that morning she went to [Petitioner]'s house and asked him if he knew Lozano was dead. [Petitioner] did not reply. When she asked him what had happened the previous night, [Petitioner] said he and Lozano planned to fight at the river. [Petitioner] drove to the river but Lozano did not show.

(Tr. Parole Hearing at 10-13.[1])

## DISCUSSION

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted

---

[1] The transcript of the parole hearing is contained in the petition for writ of habeas corpus submitted by Petitioner to the Fresno County Superior court. It is listed as Exhibit A of the petition. This petition is Exhibit A of Respondent's Answer.

and sentenced Petitioner if the State "contains two or more Federal judicial districts").

## II.     AEDPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the]

U.S. District Cour
E. D. California

4

Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Fresno County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. The California Supreme Court and the California Court of Appeal's decisions were summary denials; thus, the Court looks through those decisions to the last reasoned decision, namely, the decision by the Fresno County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth four grounds for relief, which all contend that Petitioner's due process rights were violated by the Board's denial of parole. In his first ground for relief, Petitioner contends that a denial based on unchanging factors violates his due process rights. Petitioner additionally alleges that the Board's finding that he required additional insight into the crime was not supported by the psychological report. In his third ground for relief, Petitioner argues that California precedents, namely *In re Shaputis* and *In re Lawrence*, entitles him to relief. Lastly, Petitioner contends that he was denied a neutral and unbiased decision.

The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there exist[s] a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that Petitioner does not have a federally protected liberty interest in parole. (Resp't Answer at 2:7.) The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in

the absence of state law creating an enforceable right to parole." *Id*. at 559. The *Hayward* court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As the Ninth Circuit later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state"). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). Thus, the inquiry the Court must now undertake is whether the Fresno County Superior Court's decision was an unreasonable application of the California some evidence standard.

The Superior Court initially observed that the Board "relied largely on the seriousness of the underlying offense to deny petitioner's parole." (Resp't Answer Ex. B at 1.) The Superior Court found however that reliance on the commitment offense was proper when combined with lack of insight and remorse as that combination evidenced current dangerousness. (Id. at 2.) The Superior

Court specifically cited to *In re Shaputis*, the companion case to *In re Lawrence*, in which the California Supreme Court found that lack of insight and failure to accept responsibility was sufficient to meet the some evidence standard. *In re Shaputis*, 44 Cal. 4th 1241, 1261 (2008). The Superior Court's finding that Petitioner lacked insight and remorse was based on Petitioner's failure to articulate any lessons he had learned from the self-help programming he had participated in and the psychological evaluation. As the Superior Court noted in its decision

> [T]he Board was concerned that the petitioner's most recent psychological evaluation was not favorable, and assessed petitioner as being a low to moderate risk of violence if released. ([Tr. Parole Hearing] at p. 98:14-100:3.) In particular, the Board noted that the psychologist found that petitioner lacked empathy and remorse about his crime. (Id. at p. 99:6-8.) The psychologist also found that petitioner lacked remorse or guilt, failed to accept responsibility for his actions, had a tendency toward glibness, superficial charm, grandiose sense of self-worth, pathological lying, shallow affect, callousness, lacked empathy, had poor behavioral controls, and was irresponsible. (Id. at 99:14-22.)

(Resp't Answer Ex. B at 3.)

The Court initially notes that the Superior Court applied the correct standard of review as the California Supreme Court held in *Lawrence* that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). The Ninth Circuit reiterated this principle, stating that "a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221). As the Ninth Circuit observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Id*. (quoting *In re Lawrence*, 44 Cal. 4th at 1210, 1213); *see also* Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if

released from prison," the prisoner must be found unsuitable and denied parole).

Here, the Superior Court articulated a rational nexus between the heinous nature of the commitment offense and Petitioner's lack of insight and remorse. As the California Supreme Court noted:

> the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety

*In re Lawrence*, 44 Cal. 4th at 1211.

The Superior Court found that Petitioner's current demeanor and mental state indicated that the implications of dangerousness that could be derived from the commitment offense remained probative. The Superior Court's finding is support by the record, in which the Board found Petitioner's demeanor at the hearing very troubling as Petitioner displayed a lack of remorse and insight. The Board stated that Petitioner "probably take[s] the cake for being extraordinarily nonchalant, arrogant, and doing as little as you possibly can and still hoping that you're going to earn parole." (Tr. Parole Hearing at 93.) In its decision, the Board also noted that Petitioner displayed a lack of insight and remorse, stating that Petitioner unable "to share with us [the Board] about insight and remorse. You have no compassion for the [victim's] brother and sister that are sitting here. The only person you feel sorry for is you." (Tr. Parole Hearing at 95.)

Petitioner's lack of insight and remorse is also evidenced by the psychological evaluation. The psychological evaluation noted that Petitioner's "insight appeared moderate with an intellectual rather than affective understanding of empathy and remorse." (Psych. Eval., December 2007, at 4).[2] The psychologist, Dr. Atwood, found that the interview suggested that Petitioner lacked of remorse or guilt and failure to accept responsibility for one's own actions. (Psych. Eval. at 7.) Dr. Atwood noted that to a lesser degree, Petitioner had a tendency towards the following character traits:

---

[2] The psychological evaluation is included as Exhibit D in the petition for writ of habeas corpus submitted by Petitioner to the Fresno County Superior court. This petition is Exhibit A of Respondent's Answer.

glibness/superficial charm, grandiose sense of self worth, pathological lying, shallow affect, callous/lack of empathy, and irresponsibility.

Additionally, the psychological evaluation noted that Petitioner "meets the criteria for Alcohol Abuse, and would benefit from ongoing substance abuse treatment and community support groups." (Psych. Eval. at 6.) However, Petitioner adamantly denied having alcohol issues. (Tr. Parole Hearing at 37.) Furthermore, Petitioner had not attended Alcoholics Anonymous since 2005 and admitted that he was not concerned about the program. (Id. at 35, 40.) When asked what he had taken from previous attendance of Alcoholics Anonymous, Petitioner made a generalized statement about learning from other people's stories and was unable to identify any of twelve steps. (Id. at 37.) Similarly, Petitioner was unable to identify any skills he had learned from several self-help courses he completed. (Id. at 38, 40-42.) Petitioner's participation in self-help was found by the Board to be "extraordinarily limited." (Id. at 97.)

Petitioner's current demeanor and attitude, as evidenced by his lack of remorse and insight and his limited participation in self-help, render the heinous nature of the commitment offense probative as it is clear Petitioner has failed to rehabilitate himself. Thus, the Court does not find it objectively unreasonable for the Superior Court to have relied on the commitment offense and Petitioner's lack of insight to find that there was some evidence of current dangerousness. As the Superior Court's decision was not objectively unreasonable, Petitioner is not entitled to habeas corpus relief.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
2  filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.
3  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The
4  parties are advised that failure to file objections within the specified time may waive the right to
5  appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
6  IT IS SO ORDERED.

7  **Dated:   August 2, 2010**              /s/ John M. Dixon
                                    UNITED STATES MAGISTRATE JUDGE